IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:24-cv-00486-E |
| $21,410.00 IN U.S. CURRENCY, | § § | |
| Defendant in Rem. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff the United States of America's (the "Government") Motion for Default Judgment and Final Judgment of Forfeiture (ECF No. 11), which the District Judge referred to the United States Magistrate Judge for findings and a recommendation (ECF No. 12). For the reasons explained below, the District Judge should **GRANT** the Motion and enter a final judgment of forfeiture.

**Background**

On June 28, 2023, DEA Task Force Officers seized $21,410 in U.S. Currency (the "Property") from James Keyon Jefferson at the DFW International Airport in the course of a drug trafficking investigation by the DEA's Dallas Airport Interdiction Group. Compl. ¶ 5 (ECF No. 1). The Property was later deposited into a Loomis bank account in Dallas, Texas. *Id.* Jefferson, through his attorney, and attorneys for victims of the Juárez Cartel who obtained a multi-billion-dollar

1

judgment against the Cartel, *see Miller v. Juárez Cartel*, 2022 WL 2286952, at *75 (D.N.D. June 24, 2022), filed administrative claims to the Property. *Id.* ¶ 7.

On February 29, 2024, the Government filed its Verified Complaint for Forfeiture in Rem (ECF No. 1), seeking the forfeiture of the Property. The Government alleges that the Property is subject to forfeiture under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C) because it constitutes moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846, and because it constitutes proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1). *Id.* ¶ 1.

After initiating this action, the Government posted notice of the impending forfeiture of the Property on an official federal government website for at least 30 consecutive days, beginning March 1, 2024. *See* Notice of Publ'n 1. (ECF No. 7). The Government also sent direct notice of this action to the only known potential claimants—Jefferson, Howard Miller, Adriana Jones—and their respective attorneys, along with a copy of the Verified Complaint, via both first class U.S. mail and certified U.S. mail. *See* Certificate of Serv. (ECF No. 8). The notices sent to Jefferson, Jefferson's counsel, and Jones's counsel were successfully delivered, but the notices sent to Jones, Miller, and Miller's counsel were not. Decl. Default ¶ 5 (declaration of John Penn) (ECF No. 9).

No potential claimant, including those who did not receive direct notice, filed a claim for the Property. Decl. Default ¶¶ 6–7 (ECF No. 9). After both the direct notice and publication notice deadlines expired, the Clerk entered a default on the Government's request against Jefferson, Jones, Miller, and all other persons and entities. Clerk's Default (ECF No. 10). The Government then filed its motion for default judgment against Jefferson, Jones, and Miller, seeking a final judgment of forfeiture. (ECF No. 11).

## Legal Standard

1. *Default Judgment*

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). When a default has been entered, the factual allegations of the complaint are taken as true. *U.S. For Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (first citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981); and then citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2). Whether to enter default judgment is within the sound discretion of the court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) ("[T]he entry of default judgment is committed to the discretion of the district judge."). "A party is not entitled to a default judgment as a matter of right, even where a defendant is

3

technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam) (citing *Mason*, 562 F.2d at 345); *accord Nat'l Cas. Co. v. KT2 LLC*, 2021 WL 1338221, at *2 (N.D. Tex. Apr. 8, 2021) (Brown, J.). Default judgments are "disfavored" and there is "a strong policy in favor of decisions on the merits and against resolution of cases through default judgments." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (internal citations and quotations omitted). To determine whether to enter default judgment, the Court conducts a two-part analysis.

First, the Court examines whether a default judgment is appropriate under the circumstances, considering: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the Court would feel obligated to set aside a default on the defendant's motion. *Lindsey*, 161 F.3d at 893 (citing 10 Charles Alan Wright et al., Federal Practice and Procedure § 2685 (2d ed. 1983)).

Second, the Court assesses the merits of a plaintiff's claims to determine whether a sufficient basis exists in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. Although a defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id*. However, "the requisite threshold for pleading sufficiency is lower on a motion for default judgment than on a motion to dismiss." *Edmond v. Marathon*

*Petroleum Co., LP*, 2021 WL 619503, at *7 (W.D. Tex. Feb. 17, 2021) (citing *Nishimatsu Constr.*, 515 F.2d at 1206).

    2. *Civil Forfeiture*

"A judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." Fed. R. Civ. P. Supp. R. G(4)(a)(i). The government can publish notice by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days." Fed. R. Civ. P. Supp. R. G(4)(a)(iv). And "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before [60 days after the first day of publication on an official internet government forfeiture site]." Fed. R. Civ. P. Supp. R. G(4)(b)(i).

Notice sent to potential claimants must include (1) "the date when the notice is sent"; (2) "a deadline for filing a claim, at least 35 days after the notice is sent"; (3) notice "that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim"; and (4) "the name of the government attorney to be served with the claim and answer." Fed. R. Civ. P. Supp. R. G(4)(b)(ii).

Relevant here, a civil forfeiture complaint must "(a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; . . . (e) identify the statute under which the forfeiture action is brought; and (f) state

5

sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2).

And "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). "Rule E(2)(a) imposes a substantive pleading requirement" and requires the government to "do more than simply provide greater detail than it otherwise would be required to [provide] under Rule 8 of the Federal Rules of Civil Procedure." *United States v. $49,000 Currency*, 330 F.3d 371, 375 n.8 (5th Cir. 2003). Although "the government need not prove elements of its case at the pleading stage, . . . [it] must allege facts supporting a reasonable belief that it will be able to bear its burden at trial." *Id.* (emphasis omitted).

## Analysis

*1. Default judgment is procedurally proper under the circumstances.*

First, the Government has shown that all potential claimants to the Property are in default. No potential claimants have filed claims for the Property, and the deadline to file such claims has passed. Decl. Default ¶¶ 6–7 (ECF No. 9). Under 18 U.S.C. § 983(a)(4)(A), individuals who do not receive direct notice must file claims by either 30 days from the final date of publication of the notice or 60 days after the first day of publication. *See* 18 U.S.C. § 983(a)(4)(A). Here, the first date of internet publication occurred on March 1, 2024, and the final date of publication

6

was March 30, 2024, meaning that parties who did not receive direct notice needed to file a claim by April 30, 2024. *See* Decl. Default at ¶ 7.

The Government also sent direct notice of this forfeiture action to Jefferson, Jones, Miller, and their respective attorneys via both certified and first-class mail[1] on March 8, 2024. *Id.* at ¶¶ 5. The notices included a copy of the forfeiture complaint and stated the deadlines for filing a claim and an answer to the Property, the procedure for filing a claim and answer, and the name of the government attorney to be served with the claim and answer. *Id.* Under 18 U.S.C. § 983(a)(4)(A), potential claimants who receive direct notice of the forfeiture complaint are required to file a claim to the Property no later than 30 days after service of the Government's complaint. 18 U.S.C. § 983(a)(4)(A). To date, neither Jefferson, nor Jones, nor Miller have filed a claim. Mot. ¶¶ 5-6 (ECF No. 11).

The Government has shown that the deadlines for potential claimants who were indirectly or directly notified have passed and no individuals have filed

---

[1] The Government's attempt to deliver actual notice to notices sent to Jones, Miller, and Miller's counsel were not successful. Decl. Default ¶ 5 (declaration of John Penn) (ECF No. 9). But the Court nevertheless concludes that the Government followed proper notice procedures. Due process in the forfeiture context does not require actual notice; rather, it requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the forfeiture action and afford them an opportunity to present their objections." *Bailey v. U.S.*, 805 F.3d 736, 738–39 (5th Cir. 2007). And the fact that actual notice was returned as undeliverable does not render default judgment improper when general notice of the forfeiture was given to the public through the Government's posting on its official website. *U.S. v. $18,592.00 of $35,037.00 in U.S. Currency*, 2013 WL 3095519, at *5 (N.D. Tex. June 20, 2013) (Lynn, J.) (citing *U.S. v. $536,039.00 in U.S. Currency*, 760 F.Supp. 575, 577 (S.D. Miss. 1990)).

claims. Therefore, Jefferson, Jones, and Miller are in default. *See U.S. v. $31,480 in U.S. Currency*, 2022 WL 17416356, at *3 (N.D. Tex. Oct. 6, 2022) (Toliver, J.), *adopted by* 2022 WL 14915584 (N.D. Tex. Oct. 25, 2022).

The *Lindsey* factors[2] also support granting default judgment under these circumstances. Because no potential claimant has filed a claim to the Property, there are no material facts in dispute. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 ("The defendant, by his default, admits the [Government's] well pleaded allegations of fact"). The claimants' failure to file a claim or otherwise respond "has brought the adversary process to a halt, effectively prejudicing the government's interest in obtaining forfeiture of the property at issue." *U.S. v. $932,501.94 in Funds Seized from BBVA Account Ending in 8653*, 2022 WL 4227540, at *4 (N.D. Tex. Aug. 31, 2022) (Horan, J.), *adopted by* 2022 WL 4227520 (N.D. Tex. Sept. 13, 2022). As discussed above, the Government has shown that the grounds for default are clearly established, and there is no evidence that the default was caused by good faith mistake or excusable neglect. *See Lindsey*, 161 F.3d at 893. The passing of at least five months since the expiration of the deadlines for any potential claimant

---

[2] Pursuant to *Lindsey*, the Court should examine whether default judgment is appropriate under the circumstances, considering: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by a good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the Court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2685 (2d ed. 1983)).

to file a claim mitigates the harshness of a default judgment. *See* Decl. Default ¶ 6–7. Finally, there are no facts in the record which indicate that the Court would be obligated to set aside the default, if challenged. Accordingly, a default judgment is procedurally warranted.

   2. *There is sufficient basis in the pleadings for entry of a default judgment.*

In addition to demonstrating the default judgment is procedurally warranted, the Government's Complaint meets the requirements of Federal Rules of Civil Procedure Supplemental Rule G(2) and pleads sufficient facts supporting entry of default judgment. As explained above, a civil forfeiture complaint must "(a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; . . . (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2). The Government's Complaint does all of the above.

First, the Complaint is verified. Compl. 14 (including verification from DEA Special Agent Cheryl Davis). And the Complaint properly states the grounds for subject matter jurisdiction, in rem jurisdiction, and venue in this District. *Id.* ¶¶ 2, 3. The Complaint describes the subject Property with reasonable particularity, explaining that the Property is $21,410 in U.S. Currency seized from Jefferson's luggage at DFW Airport and later deposited into a Loomis bank account in Dallas,

Texas. *Id.* at 4–7. The Complaint also identifies the statutes under which forfeiture is sought: 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). *Id.* at 1.

Finally, the Complaint states sufficiently detailed facts to support a reasonable belief that the Government will be able to meets its burden of proof at trial. Specifically, the Complaint alleges that on June 28, 2023, DEA Task Force Officers observed a piece of "suspicious" luggage tagged with the name "Jefferson/James" being loaded into a plane at DFW Airport set for Los Angeles. Compl. ¶ 12-13. Officers conducted a record check of the tag name and number, which indicated that the ticket was a one-way flight purchased the day before. *Id.* ¶ 14. After a drug dog positively alerted for narcotics in the suitcase, officers identified and approached Jefferson on the jet bridge while he was boarding. *Id.* at 4. When Jefferson complied with the officers' request for his boarding pass and ID, officers "noticed a large quantity of U.S. currency in the wallet." *Id.* ¶ 23. After agreeing to answer questions, Jefferson claimed that he was going to Los Angeles to stay with family for about a week, but he had not yet booked a return flight. *Id.* at 4-5. Officers told Jefferson that a drug dog positively alerted to his checked suitcase and Jefferson consented to a search of the suitcase and later to a search of his carry-on bag. *Id.* at 5-6. Officers noted that Jefferson was "extremely nervous and began pacing" as they continued questioning. *Id.* ¶ 32.

In response to questioning, Jefferson stated he had $3,000 in his wallet and $7,000 in his suitcase. *Id.* ¶ 33-34. Officers located nine rubber-banded stacks of U.S. currency in Jefferson's checked suitcase and several more stacks in his carry-

10

on bag. *Id.* at 6-7. The Complaint states that the amount of money seized, $21,410, is not typical of legitimate airport travelers. *Id.* ¶ 60. The inside of the suitcase also tested positive for the presence of marijuana. *Id.* ¶ 49. Lastly, officers seized two cell phones from Jefferson, obtained a search warrant, and conducted a subsequent search of the phones. *Id.* ¶ 57. The search revealed "many text messages and images," some from the Los Angeles area, that "were indicative of narcotics trafficking." *Id.* ¶ 58-59. These images and messages included pictures of marijuana buds and communications regarding invoices for marijuana purchases. *Id.* at 9-10.

When asked why he was traveling with so much money, Jefferson stated that he "was traveling to buy a truck because he was in the trucking business"—a different explanation from his earlier stated reason (to visit family). *Id.* ¶ 42-43. Jefferson stated there was no content on his cell phones regarding purchasing a truck. *Id.* ¶ 46. When asked a second time where he would be staying in Los Angeles, Jefferson stated "downtown," but he "did not know yet"—also a different answer than he gave earlier (with family). *Id.* ¶ 44-45. Officers advised Jefferson that they were seizing the U.S. currency as suspected drug proceeds, but he was free to board the plane. *Id.* at 8. Jefferson walked towards the plane with an airline employee, but walked back to the waiting area moments later, stating that he did not want to board the flight. *Id.* at 9.

With these facts, the Government has presented a sufficient basis on which to grant a default judgment on its claim for forfeiture of the Property. *See U.S. v. $31,480 in U.S. Currency*, 2022 WL 17416356, at *3–4.

## Recommendation

For the reasons explained above, the District Judge should **GRANT** the Government's Motion and enter a Default Judgment and Final Judgment of Forfeiture.

**SO RECOMMENDED.**

October 16, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).